United States District Court
Southern District of Texas
**ENTERED**
April 06, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

No. 3:19-cv-00188

WILLIAM TERRELL SMITH, *PLAINTIFF*,

v.

GUILD MORTGAGE COMPANY, PENNYMAC LOAN SERVICES, LLC, AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., *DEFENDANTS*.

**MEMORANDUM OPINION AND ORDER**

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

Before the court is PennyMac Loan Services, LLC's and Mortgage Electronic Registration Systems, Inc.'s (collectively "defendants") motion for summary judgment. Dkt. 12.[1] For the reasons discussed below, the court grants the motion and dismisses William Smith's claims with prejudice.

## I. Factual Background

In April 2014, Smith purchased his home, located at 9402 Emerald Green Drive in Rosharon, Texas. Smith financed the purchase with a loan from Guild Mortgage Company. Dkt. 12–1. The note was secured by a deed of trust lien payable

---

[1] The defendants' notice of removal states that Guild Mortgage Company was not served prior to removal. Dkt. 1, ¶ 4; *see* Dkt. 1–9 at 3-4. Smith has not contested or otherwise presented evidence to establish that he has served Guild Mortgage. Therefore, because there is no evidence in the record to establish that Guild Mortgage was ever properly served process, the court determines that Guild Mortgage is not before the court as a defendant.

to Guild Mortgage and names Mortgage Electronic Recordation Systems, Inc. ("MERS") as the nominee for Guild Mortgage. Dkt. 12–2.

On June 3, 2015, Guild Mortgage sold the loan to PennyMac Loan Services, LLC. Dkt. 12–4. PennyMac notified Smith of this transfer in writing on June 10, 2015. *Id.* MERS assigned the deed of trust to PennyMac on December 7, 2015. Dkt. 12–5. At present, PennyMac holds and services the loan. Dkt. 12–3, ¶ 3. By June 2015, Smith was in default. *See* Dkt. 12–6 at 2.[2] PennyMac sent Smith a notice of default and intent to accelerate on July 23, 2015. *Id.* at 2-6. To date, Smith has not cured the default. *See* Dkt. 12–3 at 35.

On October 27, 2016, Smith filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, identifying PennyMac as a secured creditor. Dkt. 12–7 at 10, 24. PennyMac filed its proof of claim on March 7, 2017. Dkt. 12–9. At that time, the outstanding loan balance was $166,940.71, and the amount due to cure Smith's default was $26,212.60. *Id.* at 2. On March 22, Smith submitted his proposed bankruptcy plan. Dkt. 12–10. The plan called for Smith to surrender the property at issue to PennyMac once the plan was confirmed. Dkt. 12–10 at 2 ("Upon confirmation of this Plan, the Debtor(s) immediately surrender and abandon the property and agree to immediately turn over and/or vacate the property, and the lienholder(s) may take any action allowed under applicable law with respect to this property without further order of this

---

[2] Page-number citations to the documents that the parties have filed refer to those that the court's electronic-case-filing system automatically assigns.

Court."). The bankruptcy court confirmed Smith's proposed bankruptcy plan on April 18, 2017.[3] Dkt. 12–11.

PennyMac did not immediately seek to foreclose on Smith's home. Instead, more than two years later, on April 25, 2019, PennyMac, through its counsel, sent Smith a notice of acceleration and posting, which advised Smith that a foreclosure sale was scheduled for June 4, 2019. Dkt. 12–13.

On May 30, 2019, Smith filed his original petition and application for temporary restraining order, temporary injunction, and permanent injunction in the 149th Judicial District Court of Brazoria County, asserting claims against all defendants for statutory fraud, common-law fraud, breach of contract, and to quiet title. Dkt. 1–5. Smith's allegations are vague, disjointed, and leave out basic facts, but the court has derived the following principal arguments: (1) MERS' assignment of deed of trust to PennyMac was fraudulent; (2) the loan itself is fraudulent due to the "switching of loan documents"; (3) that, by sending Smith monthly mortgage statements "requesting a normal monthly payment less than the fully accelerated amount due," PennyMac abandoned its attempt to accelerate the loan; and (4) PennyMac failed to properly notice the foreclosure sale. *Id.* at 4-5.

The state trial court issued a temporary restraining order on May 31, 2019, which prohibited the scheduled foreclosure sale from going forward. Dkt. 1–6. The

---

[3] The bankruptcy court ultimately dismissed Smith's case on July 15, 2019. Dkt. 12-12. The dismissal order provides only that Smith's case was dismissed for "reasons [that] were stated on the record in open court." *Id.* PennyMac, however, contends it was due to Smith's failure to make certain payments due under the approved plan. Dkt. 12 at 4.

3

defendants timely removed the action to this court on the basis of diversity jurisdiction. Dkt. 1. On November 20, 2019, the defendants moved for summary judgment. Dkt. 12. Smith did not respond.

## II. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

Even though Smith did not file a response, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). The defendants, as the movants, have the burden of establishing the absence of a genuine issue of material fact. The court

may not grant the motion unless the defendants have met their burden. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995).

Nevertheless, Smith's failure to respond means he has not designated specific facts showing a genuine issue for trial, and is, therefore, relegated to his unsworn pleadings, which are not summary-judgment evidence. *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (holding that the nonmoving party's bare allegations, standing alone, are insufficient to create a material dispute of fact and defeat a motion for summary judgment); *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) ("Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment . . ."). Moreover, when a nonmoving party fails to respond to a motion for summary judgment, the court may accept the movant's uncontroverted factual assertions as true. *See Eversley v. MBank of Dall.*, 843 F.2d 172, 174 (5th Cir. 1988).

If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Anderson*, 477 U.S. at 248. It is not the function of the court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992). Therefore, "[a]lthough we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving

party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000).

### III. Analysis

#### A. Smith's Breach-of-Contract Claims

Smith's claims for breach of contract are predicated on the MERS' assignment of the deed of trust to PennyMac, PennyMac's purchase of the underlying note from Guild Mortgage, and PennyMac's alleged failure to provide written notice of the scheduled foreclosure sale. Dkt. 1–5 at 4-5, 7.

The essential elements of a breach-of-contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

#### 1. MERS Had the Authority to Assign the Deed of Trust to PennyMac

The Fifth Circuit "has expressly recognized that MERS may assign a deed of trust to a third party and that such assignments confer the new assignee standing to non-judicially foreclose on property associated with that particular deed of trust." *Reece v. United States Bank Nat'l Ass'n*, 762 F.3d 422, 425 (5th Cir. 2014) (citing *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253-55 (5th Cir. 2013)).

6

MERS assigned the deed of trust to PennyMac and recorded the transfer in the public records of Brazoria County. Dkt. 12–5. Therefore, as a matter of law, PennyMac, as the beneficiary of the deed of trust, has the right to foreclose on the underlying property pursuant to the deed of trust. *Wiley v. Deutsche Bank Nat'l Tr. Co.*, 539 F. App'x 533, 537 (5th Cir. 2013) ("the deed of trust unquestionably names MERS as its beneficiary; MERS transferred the deed of trust to Deutsche Bank and recorded that transfer. The [plaintiff-appellants'] claim that a transferee in Deutsche Bank's position does not have the power to foreclose is incorrect as a matter of Texas law.").

Smith's first argument is foreclosed by Fifth Circuit precedent.

### 2. No "Switching of Loan Documents" Occurred

Smith appears to argue that PennyMac's purchase of his mortgage loan was done so without his knowledge and, therefore, breached the terms of the loan agreement. Dkt. 1–5 at 5. But the deed of trust expressly grants Guild Mortgage the right to sell the promissory note without notifying Smith:

> 20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note . . .

Dkt. 12–2 at 11. Moreover, PennyMac notified Smith it had purchased his loan from Guild Mortgage in writing on June 10, 2015. Dkt. 12–5.

This argument warrants no further discussion.

### 3. PennyMac Did Not Waive its Prior Acceleration of the Loan

Smith alleges that PennyMac abandoned its attempt to accelerate the loan when it sent Smith monthly mortgage statements "requesting a normal monthly payment [that were] less than the full accelerated amount due." Dkt. 1–5 at 5.

"When an acceleration is abandoned by conduct, the intent to abandon must be 'unequivocally manifested.'" *Sexton v. Deutsche Bank Nat'l Tr. Co. for GSAMP Tr. 2007-FM2, Mortg. Pass-Through Certificates, Series 2007-FM2*, 731 F. App'x 302, 305 (5th Cir. 2018) (citing *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015)).

The monthly mortgage statements to which Smith refers explicitly provide:

> This account is severely delinquent, and as such, *foreclosure action has begun*. Failure to cure the default may result in foreclosure and the loss of your home. Please see below for information on the amount needed to reinstate the account and *avoid foreclosure*.

Dkt. 12–14 at 1 (emphasis added).

The Fifth Circuit determined similar language was inconsistent with abandonment in *Sexton*. 731 F. App'x at 307. There, as here, the monthly statements sought less than the full balance of the loan, but also advised that the "loan is in foreclosure." *Id.* The Fifth Circuit held: "At most, drawing all reasonable inferences, as required, in the [plaintiffs'] favor, this language arguably renders the monthly statements ambiguous, rather than unequivocal." *Id.* Because of this ambiguity, the Fifth Circuit could not determine that the monthly statements, on their own, "unequivocally manifested abandonment." *Id.* at 307–08.

The court reaches the same conclusion in the case at bar; PennyMac's monthly statements do not "unequivocally manifest" its abandonment of its acceleration of Smith's loan. *See Pitts v. Bank of New York Mellon Tr. Co.*, 583 S.W.3d 258, 265 (Tex. App.—Dallas 2018, no pet.) ("The language in the monthly statements and first delinquency notice that the loan was in the process of foreclosure indicated that the loan's maturity date had already been accelerated and that the noteholder did not intend to abandon the prior acceleration.").

### 4. PennyMac Properly Notified Smith of the Foreclosure Sale

Under Texas law, a debtor in default of a note must be served with written notice of the default by certified mail and given at least 20 days to cure the default before notice of sale can be given. Tex. Prop. Code. § 51.002(d).[4] Further, notice of the foreclosure sale must be given at least 21 days before the date of the sale. *Id.* § 51.002(b).

The uncontested evidence establishes that PennyMac sent Smith a notice of default by certified mail on July 23, 2015—nearly two years before it notified Smith of the foreclosure sale—advising that he had 30 days to cure the default, otherwise, "PennyMac may take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property." Dkt. 12–6. Then, on April 25, 2019, PennyMac sent Smith a notice of acceleration and posting, which

---

[4] The deed of trust similarly requires PennyMac to send Smith a notice of default and then, if after 30 days Smith failed to cure his default, PennyMac is permitted send a notice of acceleration and schedule the property for foreclosure. Dkt. 12–2 at 12.

9

advised Smith that a foreclosure sale was scheduled for June 4, 2019—40 days later. Dkt. 12–13.

Further, even if Smith's allegations were true, there is no claim under section 51.002(b) or (d) where no foreclosure has taken place. *See Suarez v. Ocwen Loan Servicing, LLC*, 5:15-CV-664-DAE, 2015 WL 7076674, at *3 (W.D. Tex. Nov. 12, 2015) ("Failure to comply with Texas Property Code §§ 51.002 (b) and (d) does not provide Plaintiff with a cause of action prior to an actual foreclosure sale.") (citing *Crucci v. Seterus, Inc.*, EP-13-CV-317-KC, 2013 WL 6146040, at *3 (W.D. Tex. Nov. 21, 2013)). Again, the unrefuted summary judgment evidence establishes that no foreclosure has occurred. Dkt. 12–3, ¶ 13.

For the reasons discussed above, Smith's claims for breach of contract are dismissed with prejudice.

### B. Smith's Fraud Claims

The defendants urge the court that Smith's fraud allegations fail to satisfy Rule 9(b)'s heightened pleading standard and, in any event, are not supported by competent summary-judgment evidence. Dkt. 12 at 11-14.

The defendants' allegation of a Rule 9(b) violation in their summary-judgment motion is arguably untimely. *See Lancaster v. Kordsiemon*, 1:15-CV-00239-BLW, 2016 WL 5662011, at *6 (D. Idaho Sept. 29, 2016) ("Rule 9(b) motions belong alongside a Rule 12(b)(6) motion to dismiss"); *Doe v. Boy Scouts of Am.*, 329 F. Supp. 3d 1168, 1189 (D. Idaho 2018) (striking Rule 9 challenge from motion for summary judgment where the defendants timely raised the affirmative

10

defense), *reconsideration denied sub nom. Does I-XIX v. Boy Scouts of Am.*, 1:13-CV-00275-BLW, 2019 WL 1233618 (D. Idaho Mar. 15, 2019); *but see United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1340, 1346 (N.D. Ga. 2015) ("[A] Rule 9(b) deficiency may be resolved at summary judgment or by another type of motion late in litigation.").

Rule 9(b) exists to ensure that defendants have sufficient knowledge of the fraud alleged in a complaint to present a defense in an answer. A Rule 9(b) motion is proper when a defendant feels that a fraud allegation has not been properly pleaded with enough particularly to allow defendants to respond adequately. It is highly unusual for a Rule 9(b) motion to be brought within a motion for summary judgment because Rule 9(b) concerns the plaintiff's allegations while Rule 56 concerns the record evidence that supports or defends against those allegations.

Regardless, the court finds that the defendants have satisfied their burden of demonstrating the absence of a genuine issue of material fact as to Smith's fraud claims.

The elements of a common-law fraud claim are "(1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made a representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered an injury." *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180,

11

188 (5th Cir. 2009) (citing *Allstate Ins. Co. v. Receivable Fin. Co.*, 5*Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 406 (5th Cir. 2007), 406 (5th Cir. 2007) (interpreting Texas law)).

The elements of statutory fraud under Texas law are that a defendant made either: (1) a false representation of past or existing material fact for the purpose of inducing a person to enter a contract and relied upon in entering the contract, or (2) a false material promise to do an act, made with the intent not to fulfill it, made to a person to induce the person to enter a contract, and relied upon in entering the contract. Tex. Bus. & Com. Code § 27.01(a)(1)-(2)

Smith's fraud claims are hardly decipherable. Indeed, it is not clear what "actions committed by [the] [d]efendants, [sic] constitute statutory fraud" or what "false and material misrepresentations" were made by the "[d]efendants' representatives," much less which of the defendants' representatives made the purportedly fraudulent representations. *See* Dkt. 1–5 at 6-7.

Without question, Smith has presented no evidence to support a statutory or common-law claim for fraud. Conversely, the defendants have submitted uncontroverted evidence showing that MERS was authorized to assign the deed of trust; that the loan documents—which Smith signed—expressly authorized the transfer of the note to PennyMac; that PennyMac notified Smith of said transfer and recorded it in the public records of Brazoria County; that PennyMac notified Smith of his default and its intent to accelerate; and that the foreclosure

proceedings otherwise complied with the Texas Property Code. *See supra* Section III(A). Smith's fraud claims fail.[5]

### C. Smith's Claim to Quiet Title

Under Texas law, to prevail in a suit to quiet title, the plaintiff must prove (1) his right, title, or ownership in real property; (2) that the defendant has asserted a "cloud" on his property, meaning an outstanding claim or encumbrance valid on its face that, if it were valid, would affect or impair the property owner's title; and (3) that the defendant's claim or encumbrance is invalid. *Warren v. Bank of Am., N.A.*, 566 F. App'x 379, 382 (5th Cir. 2014) (citing *Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.; *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

Texas courts have made clear that "a necessary prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed on the note." *Cook-Bell v. Mortg. Elec. Registration Sys.*, 868 F. Supp. 2d 585, 591 (N.D. Tex. 2012) (quoting *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (omissions in original)). Furthermore, Smith has the burden of establishing his "superior equity and right to relief," relying on the strength of his own title, not the inferiority of the defendants' title. *Id.* (citing *Hahn*, 321 S.W.3d at 531).

---

[5] In addition to what the court has set out above, Smith's fraud claims also appear to run afoul of the economic-loss doctrine. But including that analysis here would be overkill.

13

Smith's entire argument to quiet title is as follows: "Defendants have no . . . interest of any kind in or to the Property, or any part of the Property, due to the fact that no Defendant is now, or ever was a real party in interest with standing to foreclose. . . ." Dkt. 1–5 at 8. This argument is, not to put too fine a point on it, fatuous. *See supra* Section III(A)(1)–(2). For reasons already explained in this opinion, Smith's claim to quiet title is dismissed with prejudice.

### D. Smith Is Not Entitled to Injunctive Relief or Attorneys' Fees

Smith's request for an injunction is dependent upon the assertion of a viable cause of action. *See, e.g., Turnbow v. PNC Mortg.*, 4:12-CV-2835, 2013 WL 5410075, at *7 (S.D. Tex. Sept. 25, 2013) (Harmon, J.) ("To sustain a claim for injunctive relief, a plaintiff must first plead a viable underlying cause of action."); *Hudson v. Bd. of Regents of Tex. S. Univ.*, 4:05-CV-03297, 2008 WL 2754622, at *6 (S.D. Tex. July 14, 2008) (Ellison, J.) ("Plaintiffs may not request injunctions that relate to unmeritorious federal law claims."). As explained above, Smith has not asserted a valid cause of action. Therefore, he is not entitled to injunctive relief.

The same is true for Smith's request for attorneys' fees. *Green Int'l v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) ("[A]ttorney's fees are recoverable only for authorized claims."); *cf. MacDonald v. JPMorgan Chase Bank*, 7:18-CV-289, 2019 WL 3361283, at *7 (S.D. Tex. July 25, 2019) (Alvarez, J.).

\*\*\*

For the reasons set forth above, the court grants the defendants' motion for summary judgment and dismisses Smith's claims with prejudice. As Guild

Mortgage, the only other named defendant, has not been served, this order disposes of all of Smith's pending claims. Accordingly, the court will issue a final judgment along with this order.

Signed on Galveston Island on this, the 6th day of April, 2020.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE